UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| XAVIER BALLARIN, Plaintiff | ) | C.A. No. 04-278T |
| vs. | ) | |
| DARRELL LUCENTE, JOHN CROY, XLC CORP. and QUALGUARD, INC., Defendants | ) | |

PLAINTIFF'S OBJECTION TO MOTION TO COMPEL

Plaintiff Xavier Ballarin hereby objects to defendants' motion to compel production of his computer for data retrieval and analysis. Plaintiff's supporting memorandum is filed herewith, together with a form of confidentiality order governing inspection of plaintiff's computer.

Gordon P. Cleary, No. 1948
VETTER & WHITE
Attorneys for Plaintiff
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Beth Jacobson, Esq.
Sullivan & Worcester, LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
(617) 338-2880 FAX

Dated: March 14, 2005

20

CERTIFICATE OF SERVICE

To:

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street - Suite 330
Providence, RI 02903-2814

I hereby certify that I served on the above-named counsel of record a copy of the within Plaintiff's Objection to Motion To Compel by mailing first class mail, postage prepaid, on the 14th day of March, 2005.

Lisa A. Lariviere

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| XAVIER BALLARIN, Plaintiff | ) | C.A. No. 04-278T |
| vs. | ) | |
| DARRELL LUCENTE, JOHN CROY, XLC CORP. and QUALGUARD, INC., Defendants | ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
OBJECTION TO DEFENDANTS' MOTION TO COMPEL

Defendants have moved to compel an expert examination and analysis of plaintiff's computer. Plaintiff has no objection to the examination, so long as defendants produce all documents requested of them so an examination of defendants' computers can be made concurrently, and so long as the examination takes place pursuant to a confidentiality order establishing a protocol that adequately guards plaintiff's reasonable expectations of privacy and privilege.

**THE NATURE OF THE CASE**

This is a suit by a minority shareholder to recover the value of his stock in a Rhode Island corporation, and in a Delaware corporation that was spun off to conduct a portion of the Rhode Island corporation's business.

In 2000, plaintiff Xavier Ballarin ("Ballarin") and defendants Darrell Lucente ("Lucente") and John Croy ("Croy") formed a Rhode Island corporation, XLC (f/k/a Highstream and f/k/a Qualguard), which developed into a dial-up Internet service provider ("ISP"). An ISP, such as AOL or Netzero, provides telephone-line access to the Internet, bringing all of the resources of the worldwide web to individual computer owners.

Ballarin and the two individual defendants were the owners of the company, each holding one-third of the stock, and each serving on the Board of Directors. Lucente was president, and Ballarin was Treasurer. The business prospered. At the beginning of 2003, however, Lucente and Croy, Lucente particularly, took a series of adverse actions against Ballarin -- cutting his pay and assigning him to ground floor projects. In June 2003, defendants fired Ballarin, and stripped him of his director and treasurer positions.

Defendants then established a stock-option plan under which they would have issued themselves more stock, thereby diluting Ballarin's percentage holding. When Ballarin remonstrated, defendants announced he had forfeited his XLC stock (and stock in the spin-off entity), and accused him of misconduct and misdeeds throughout 2002, allegedly losing the company hundreds of thousands of dollars. To boot, two years after the event, in 2004, Lucente filed a criminal charge against Ballarin alleging he embezzled company funds in August 2002 by writing himself two checks. Thereafter, Ballarin recovered copies of e-mails between Lucente and himself authorizing the two checks. Lucente apparently claims forgery now, saying he never received or sent the e-mails because they are not in his computer.

**DEFENDANTS' INADEQUATE DISCOVERY RESPONSES**

By the time of the initial pretrial conference, plaintiff made Initial Disclosures under F.R.C.P. 26, turning over numerous documents supporting his claim. Despite filing a six count counterclaim demanding nearly $500,000 in damages, defendants made no Initial Disclosures under F.R.C.P. 26. In October 2004, having received no Initial Disclosures, plaintiff served defendants with a request for production of documents, many of them centering on actions and communications during the year 2002, when defendants' Counterclaim alleges Ballarin was "repeatedly negligent and willfully derelict," causing the company enormous losses.

Until late December of 2004, when copies of e-mails from just about every time period other than 2002 were made available, defendants produced no documents pursuant to the request to produce. Until plaintiff filed a motion to compel production on February 22, 2005, defendants had not produced anything except e-mails.

Defendants initially said that Lucente could not locate the computer he used in 2002. Later, Lucente's 2002 computer was supposedly located. However, even after the motion to compel was filed, Lucente and Croy turned over only a smattering of papers, and still have not produced 2002 e-mails from Ballarin to Lucente, the president, and 2002 e-mails from Lucente to Ballarin, the treasurer.

Moreover, defendants profess they are unable to locate, or "unable to locate presently" thirteen categories of documents supporting their Counterclaim counts that Ballarin's "repeatedly negligent" and "willfully derelict" actions scuttled important corporate operations and caused losses totaling hundreds of thousands of dollars. Defendants' proffered inability to locate documents supporting their Counterclaim frustrates Ballarin's ability to defend himself. Without documents particularizing what he allegedly did wrong, he is unable to conduct a meaningful search of his own computer records to rebut defendants' Counterclaim.

At the same time, the inadequate discovery defendants have provided prevents plaintiff from having any meaningful way to search defendants' computers for word-processing documents, incoming and outgoing electronic mail messages, spreadsheets, financial statements, and any of a host of other computer records which Ballarin might use to refute defendants' charges. Without defendants' complete production of documents, plaintiff will not have the documents needed to devise search terms, and frame searches that will yield documents bearing on what defendants allege in their Counterclaim. Plaintiff has written defendants about this problem, to no avail.

As a matter of fairness, and to enable Ballarin to conduct discovery of computer records from the company he is alleged to have nearly ruined, defendants should not be permitted to have an expert inspection of Ballarin's computer until defendants have given him the information he needs to perform an equivalent inspection of his own and of defendants' computers.

**DEFENDANTS' COMPUTER INSPECTION SHOULD BE SUBJECT TO A CONFIDENTIALITY ORDER PROTOCOL.**

Ballarin's computer stores relevant information, but also stores privileged information, such as correspondence with counsel, proprietary information, such as data used in his present business, and private information, such as financial and family records and communications. In such circumstances, courts have permitted inspections of computers by experts, but establish protocols to ensure that only properly discoverable information is accrued, searched and produced.

A common protocol consists of these steps:

1. The expert must assent to and sign a confidentiality order in the form as attached.

2. Defendants' expert "recover[s] a mirror image of the hard drive" in the computer to be inspected, without turning on the computer or performing any operations on it. The Antioch Co. v. Scrapbook Borders, Inc., 210 F.R.D. 645, 653 (D. Minn. 2002).

3. The defendants' expert searches the mirror image drive by "an agreed upon list of search terms." Tulip Computers International B.V. v. Dell Computer Corporation, 2002 WL 818061, *7 (D. Del. 2002); Wall & Paroff, Cracking the Computer Forensics Mystery, 17 Utah B.J. 10, 14 (2004).

4. The defendants' expert then prints recovered documents, and sends the computer, the mirror image drive and the recorded documents to plaintiff's counsel, who will review the "records for privilege and responsiveness to the search," and then produces non-privileged documents, and a privilege log, to defendants. Simon Property Group, L.P. v. mySimon, Inc., 194 F.R.D. 639, 641-42 (S.D. Ind. 2000); Playboy Enterprises, Inc. v. Welles, 60 F.Supp. 2d 1050, 1055 (S.D. Cal. 1999).

5. The defendants' expert also produces to plaintiff's counsel a report setting forth the scope of the work he performed, a general description (not disclosing the contents) of the types of records, and the volume of records produced to plaintiff's counsel. The report should also include information showing whether any deleted data was recovered, when any recovered "deleted" file was deleted and the available information about the deletion and contents of any deleted file that cannot be recovered. The Antioch Co., 210 F.R.D. at 653; Simon Property Group, L.P., 194 F.R.D. at 641-42.

Defendants have acknowledged the need for a confidentiality order, and there is no dispute that a confidentiality order is required. Plaintiff submits, based on the cases discussed and the information stored in Xavier Ballarin's computer, that the attached form of confidentiality order is necessary to guard plaintiff's confidential, privileged and proprietary information. Plaintiff is willing to abide by the same form of confidentiality order when defendants' computers are examined and analyzed.

Gordon P. Cleary, No. 1948
VETTER & WHITE
Attorneys for Plaintiff
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Beth Jacobson, Esq.
Sullivan & Worcester, LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
(617) 338-2880 FAX

Dated: March 14 , 2005

CERTIFICATE OF SERVICE

To:

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street - Suite 330
Providence, RI 02903-2814

I hereby certify that I served on the above-named counsel of record a copy of the within Memorandum in Support of Plaintiff's Objection to Defendants' Motion To Compel by mailing first class mail, postage prepaid, on the 14th day of March, 2005.

Lisa A. Lariviere

**CONFIDENTIALITY ORDER**

WHEREAS, James McCormick ("McCormick") and XLC Corporation, Qualguard, Inc., Darrell Lucente and John Croy (collectively, the "Defendants") have retained the services of Brian Halpin, Esq., his agents and employees ("Halpin") (at their sole expense) to take an image of the hard drive contained on a certain computer of Xavier Ballarin ("Ballarin") (the "Services") solely relating to C.A. No. 04-278T filed in the U.S. District Court for the District of Rhode Island; and

WHEREAS, in connection with performing the Services, Halpin, his agents and employees, will obtain access to certain confidential business, personal and privileged information contained in such computer(s), including, without limitation, confidential business information, source codes, object codes, data files, data entries, templates, forms, software, financial and accounting information, trade secrets, and personal and privileged information of Ballarin (hereinafter referred to as "Ballarin's Information"); and

WHEREAS, the disclosure of Ballarin's Information would jeopardize the personal and property rights of Ballarin and/or would cause damage to Ballarin; and

WHEREAS, Ballarin has agreed to provide a certain computer to Halpin only with Halpin's representation that the information contained on his computer will not be disseminated to third parties and the other representations contained below.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. In connection with performing the Services, Halpin, his agents and employees will obtain access to Ballarin's Information, and Halpin hereby recognizes and acknowledges the confidential and proprietary nature of Ballarin's Information.

2. Halpin shall not disclose to any third party, other than Vetter & White, any of Ballarin's Information. Halpin shall inform each employee and agent engaging in the Services of the personal and confidential nature of Ballarin's Information and of this Order and shall direct such employees and agents to treat the information confidential and not to copy or use it.

3. All of Ballarin's Information shall at all times remain the property of Ballarin. All such information and <u>all</u> copies will promptly be turned over to Ballarin's legal counsel, Vetter & White, immediately after Halpin accesses it and makes an image of the hard drive. Halpin will not keep copies of any of Ballarin's information (including images of the hard drive or results of any searches). Halpin also agrees not to delete, augment, alter or change in any way any information contained in Ballarin's computer, including not turning the computer on.

4. Halpin shall have access to Ballarin's computer by taking an image of the hard drive of the computer at a specified location in Providence, Rhode Island (travel costs provided by the Defendants), within 48 hours of receipt of Ballarin's computer or, in the alternative, by shipping the computer to and from Halpin's laboratory by Federal Express or other express mail provider (such cost to be paid by the Defendants). If Ballarin's computer is shipped by Federal Express or another express mail provider, Halpin, McCormick and Defendants must additionally insure the package the computer is shipped in for up to $2,000. To the extent any damage occurs during shipping, despite any insurance available from Federal Express or other mail provider and

to the extent it does not adequately cover the damage to Ballarin's computer or loss of information therein, Halpin, Defendants and McCormick will be held fully responsible.

5. Halpin shall specifically seek to avoid examination of any communication by or between Ballarin and any attorneys, specifically (but not limited to) Beth Jacobson of Sullivan & Worcester LLP (bjacobson@sandw.com) and Gordon Cleary of Vetter & White (gcleary@vetterandwhite.com), with the exception of Attorney Lester Salter, who was the attorney for Ballarin and Defendants.

6. Halpin shall specifically seek to avoid examining any data which may constitute confidential personal, trade or business secrets of Ballarin. Any information learned by Halpin other than the information he is specifically authorized to examine as provided in paragraph 4 above shall not be disclosed to McCormick, Defendants or any other person but shall be kept secret by Halpin.

7. Halpin is not authorized to report to McCormick or Defendants any substantive data other than the number of "hits" pursuant to its search terms.

8. The procedure for the examination of data in the computer will be as follows:

a. Halpin takes an image of the hard drive and returns the computer to Ballarin within 48 hours of receiving the computer.

b. McCormick gives Halpin search terms, previously agreed to by Ballarin and his counsel.

c. Halpin runs searches with the search terms and within 10 business days of receiving Ballarin's computer sends a report (see ¶9 below), the CD rom(s) of the search terms and documents or other information gathered by use of the search terms, to Gordon Cleary, attorney for Ballarin, at Vetter & White.

d. Ballarin's counsel shall review the documents, create a privilege log of documents subject to the attorney-client or other privilege, and within 10 business days (unless such time is found to be unreasonable based on the volume of documents produced) produce the remaining documents and the privilege log to McCormick.

9. After Halpin runs the searches, he will prepare a report setting forth what searches he ran as well as describing how he ran his searches, the types of files searched, the volume of files or data searched, and the types of records he has turned over to Ballarin's counsel for examination and then production (of the non-privileged and relevant) data. This report shall be turned over to Ballarin's counsel at the same time Halpin produces the documents or other data to Ballarin's counsel as set forth in ¶8(c) above. Ballarin has no duty to produce any data until such report is completed and turned over to him.

10. Halpin shall maintain in confidence Ballarin's Information that he or his employees or agents may see in the course of performing the services. Halpin also covenants

and agrees that he will take all necessary steps to maintain Ballarin's Information in a confidential fashion, including but not limited to, requiring his employees and agents to do so.

11. To the extent that any search performed accesses attorney-client communications or attorney work product, as well as personal and business confidential information, which would jeopardize Ballarin's personal and property rights, Defendants and McCormick agree and covenant that the attorney-client privilege and confidential status of other privileged data is preserved, and such inadvertent access in no way waives any attorney-client or other applicable privileges.

12. Halpin recognizes and agrees that his violation, or his employees' or agents' violation, of this Confidentiality Order would result in irreparable harm to Ballarin, and that it will be difficult to ascertain the amount of damages. Therefore, Halpin acknowledges and agrees that in addition to any other remedies Ballarin may have, Ballarin is entitled to also obtain injunctive relief (without posting bond) against Halpin, his officers, employees and agents to enforce this Confidentiality Order and prevent the dissemination or unauthorized use of Ballarin's Information. Halpin also agrees that he will pay Ballarin's reasonable attorneys' fees incurred in enforcing this Confidentiality Order, including, without limitation, in obtaining any injunctive relief due to Halpin's violation of this Confidentiality Order.

13. Halpin shall protect, indemnify and hold harmless Ballarin and his attorneys and/or agents from any and all actual loss or damage resulting from the unauthorized use and/or disclosure of any of Ballarin's Information by Halpin.

14. This document contains the complete and entire understanding of the parties hereto relative to the subject matter hereof and supersedes any previous communications, representations or agreement, whether oral or written, with respect to the subject matter hereof. This Confidentiality Order shall be construed pursuant to the laws of the State of Rhode Island. All disputes arising under this Confidentiality Order shall be resolved in the U.S. District Court of Rhode Island. Halpin hereby consents to submit himself to the jurisdiction of such court and agrees that service of process on him in any such dispute may be effected by written notice, sent by certified mail.

15. Ballarin will have reciprocal rights as to the Defendants' computers which will be examined by the person or entity chosen by Ballarin.

16. The undersigned representatives of Halpin, XLC Corporation, Qualguard, Inc., Darrell Lucente, John Croy and James McCormick covenant and represent that they are empowered to represent and bind the entity for which they sign.

IN WITNESS WHEREOF, the aforementioned persons have hereunto executed this Confidentiality Order on the date set beside their name.

Date: ____________________________ ____________________________________

Brian Halpin, Esq.

XLC CORPORATION

Date: ______________________ By: ______________________

Its: ______________________

QUALGUARD, INC.

Date: ______________________ By: ______________________

Its: ______________________

Date: ______________________ ______________________
Darrell Lucente

Date: ______________________ ______________________
John Croy

Date: ______________________ ______________________
James McCormick

BY ORDER:

______________________
Clerk

ENTER:

______________________, J.

Dated: