UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| XAVIER BALLARIN, Plaintiff | ) | C.A. No. 04-278T |
| vs. | ) | |
| DARRELL LUCENTE, JOHN CROY, XLC CORP. and QUALGUARD, INC., Defendants | ) | |

PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT OR, ALTERNATIVELY, TO PLACE THIS CASE ON THE TRIAL CALENDAR

Plaintiff Xavier Ballarin respectfully moves for a judgment enforcing a September 23, 2005 settlement agreement between plaintiff and defendants Darrell Lucente, John Croy, XLC Corp. and Qualguard, Inc. The judgment sought would provide:

A. All defendants are jointly and severally liable to pay the settlement amount, $900,000: $300,000 upon the entry of judgment, and four annual installments of $150,000, to be paid on the anniversary date of the payment of the initial $300,000;

B. Upon a default in any one of the settlement payments, all unpaid installments become immediately due and payable;

C. Defendants sign and produce a letter to Xavier Ballarin that says precisely, with nothing more and nothing less than, “We acknowledge that all checks signed and cashed and funds received by Xavier Ballarin were legal, and we no longer claim he took funds wrongfully.”

D. Standard forms of release.

Alternatively, if the September 23, 2005 settlement agreement is not enforceable, plaintiff moves that this case be placed on the next available trial calendar.

As grounds for this motion, plaintiff submits the Affidavit of Gordon P. Cleary and a supporting memorandum of law.

Gordon P. Cleary, No. 1948
VETTER & WHITE
Attorneys for Plaintiff
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Beth Jacobson, Esq.
Sullivan & Worcester, LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
(617) 338-2880 FAX

Dated: December 23 , 2005

## CERTIFICATE OF SERVICE

To:

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street - Suite 330
Providence, RI 02903-2814

Matthew J. McGowan, Esq.
Salter, McGowan, Sylvia & Leonard
The Heritage Building
321 South Main Street
Providence, Rhode Island 02903

I hereby certify that I served on the above-named counsel a copy of the within Plaintiff's Motion To Enforce Settlement or, Alternatively, To Restore This Case to the Trial Calendar by fax and mailing first class mail, postage prepaid, on the 23d day of December, 2005.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| XAVIER BALLARIN, Plaintiff | ) | C.A. No. 04-278T |
| vs. | ) | |
| DARRELL LUCENTE, JOHN CROY, XLC CORP. and QUALGUARD, INC., Defendants | ) | |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE SETTLEMENT OR, ALTERNATIVELY,
TO PLACE THIS CASE ON THE TRIAL CALENDAR

Plaintiff Xavier Ballarin ("Ballarin" or "Plaintiff") submits this memorandum, and the affidavit of Gordon P. Cleary, in support of his motion to enforce a settlement agreement arrived at in mediation conducted by the ADR Administrator or, alternatively, to have this case placed on the trial calendar. The judgment sought would provide:

1. All defendants, jointly and severally, are liable to pay plaintiff $900,000, with $300,000 to be paid upon entry of the judgment, and four installments of $150,000 to be paid annually, on the anniversary date of the entry of judgment;

2. If any installment is unpaid when due, then all unpaid installments become immediately due and payable; and,

3. Defendants shall provide plaintiff with a letter, signed by all defendants, stating "We acknowledge that all checks signed and cashed and funds received by Xavier Ballarin were legal, and we no longer claim he took funds wrongfully;"

4. Standard forms of release.

## I. BACKGROUND

### A. The Travel of the Case

This is an action by a minority shareholder, Ballarin, to compel purchase of his shares in two corporations. The complaint alleges Ballarin, a one-third shareholder in defendants XLC Corp. ("XLC") and Qualguard, Inc. ("Qualguard"), was forced out of those corporations by oppression practiced by defendants Darrell Lucente ("Lucente") and John Croy ("Croy"), each one-third shareholders in XLC Corp. and Qualguard, Inc. The defendants are XLC, Qualguard and Lucente and Croy, individually.

Ballarin, Lucente and Croy founded XLC Corp. (the name is derived from initials in the names of the three). Later, Qualguard, Inc. was established with assets spun off from XLC.

Defendants Lucente, Croy, XLC and Qualguard answered the complaint, and asserted counterclaims against Ballarin based on alleged misfeasance in the corporations' affairs. Discovery in this case was extensive, and the parties were on the cusp of filing pretrial memoranda and jury instructions when they attended the third of three extensive mediation sessions with the Court's ADR Administrator.

### B. The Settlement

A June 20, 2005 mediation lasted several hours. Plaintiff made settlement demands. In response, defendants made two settlement offers, never indicating the offers were tendered on behalf of less than all defendants. Defendants constantly acted in concert. A July 8, 2005 mediation session went an hour or so longer than the first. Again, plaintiff made settlement demands, and again defendants made settlement offers. Similarly, defendants at no time indicated the offers were made by less than all of them.

The parties engaged in extended mediation on September 23, 2005, lasting until approximately 8:00 p.m. Plaintiff made settlement demands. Defendants made a number of settlement offers based on an initial payment and a number of annual installment payments. Each time the offers were made, defendants never conditioned the settlement payment offers as made on behalf of less than all defendants, or the responsibility of less than all defendants. Ultimately, plaintiff accepted an offer from all defendants of: (a) payment of $900,000 over time and (b) provision of a letter from defendants stating, in contrast to a counterclaim they had asserted, and in charges filed with the police, that funds plaintiff received from defendants were entirely legal, and defendants no longer claimed otherwise.

The ADR Administrator thereupon began to type up the terms agreed on. He set up the format of the document, including the case caption, and typed the title, the first paragraph, paragraph 1 and the signature lines on the document. Beth Jacobson, of Sullivan & Worcester LLP, co-counsel for plaintiff, typed paragraph 2 of the document because the precise wording of the letter to be provided was important.

As soon as he printed out the document, the ADR Administrator called all counsel and all parties to sit at a conference table. He called on plaintiff's other co-counsel, Gordon Cleary, to read the document aloud, and then to recite the previously agreed payment terms aloud. Mr. Cleary stated to the assembled group: "Defendants will pay plaintiff $900,000 ... $300,000 upon execution of the settlement agreement, $150,000 annually for four years, and if any installment is not paid, then the remaining installments will be accelerated, and all due and payable upon non-payment." The ADR Administrator then had all counsel and all parties sign the document. The document, Exhibit A to the Cleary Affidavit, is notable in that the individual defendants singed personally, and not as solely representatives of the corporate defendants.

C. The Settlement Disintegrates

Following the mediation, plaintiff was the first to propose a formal settlement agreement. Various forms of formal settlement agreements passed back and forth between Mr. McCormick and Mr. Cleary. The process dragged on and on. However, on November 14, 2005, Mr. McCormick wrote Mr. Cleary saying that if they could resolve a provision putting Xavier Ballarin's shares in escrow pending his receipt of full payment, Mr. McCormick was "confident the remaining issues will fall into place."

Mr. Cleary wrote Mr. McCormick the following day, asking for clarification of his letter and asking him to call by November 17, 2005. Mr. McCormick called that day, and informed Mr. Cleary that he would be hearing from Lester Salter, Esq. and Matthew McGowan, Esq. Mr. McGowan and Mr. Salter had represented the defendants, pre-suit, and participated in pre-suit settlement discussions that defendants broke off. Mr. McGowan and Mr. Salter have not entered an appearance in the case and had not attended the mediation session, but supplanted Mr. McCormick as regards settlement.

Mr. Cleary immediately called Mr. McGowan, confirmed that Mr. McGowan would handle settlement instead of Mr. McCormick, and set up a meeting with Mr. McGowan on November 21, 2005.

Mr. Cleary met with Mr. McGowan on November 21, 2005, at Mr. McGowan's office. It quickly became clear that the settlement was coming undone. Among other points, Mr. McGowan took the position that Mr. Lucente and Mr. Croy were not obligated, along with XLC Corp. and Qualguard, Inc., to pay the settlement amount. Mr. McGowan also stated that Mr. Ballarin would have to sign a non-compete agreement, even though: (1) a non-compete had never been mentioned in settlement talks or during the mediation sessions; (2) Mr. Ballarin had not signed a non-compete while he was affiliated with the corporations or asked to sign one

when he was told to leave the companies more than two years earlier; and (3) Mr. McGowan indicated Mr. Ballarin's current business would put him in violation of the non-compete as soon as it was signed.

Since that meeting, Mr. McGowan and Mr. Cleary have talked and corresponded numerous times, and a number reworked proposed settlement agreements were tendered on behalf of plaintiff. Along the way, counsel in the case met again with the ADR Administrator, at the ADR Administrator's request, on December 1, 2005. Despite these efforts the parties have not agreed on a formal settlement agreement. Defendants continue to dispute that Mr. Lucente and Mr. Croy are not responsible for the settlement payments, even though they demand a release from liability to Mr. Ballarin.

## II. ARGUMENT

Here, there should be no question that a document entitled "Settlement Agreement", stating that moneys will be paid on terms agreed to in the presence of the ADR Administrator, all counsel and the parties, stating that a letter with the precise wording quoted, and signed by all counsel and the parties, is a valid, enforceable agreement.

### A. The Defendants are Jointly and Severally Liable under the Settlement Agreement.

At no time during settlement discussions, or during mediation, was exclusion of any defendant from responsibility to pay the settlement even mentioned. This is evidenced by the plain language of the settlement agreement.

First, the agreement opens with the statement "The parties in the above captioned case agree to settle this case on the following terms and conditions." Cleary Affidavit, Exhibit A. (Emphasis added). Second, there are no exclusions of any of the defendants in the agreement, and no exclusions were ever raised or discussed. Third, defendants Lucente and

Croy signed the agreement, and did not limit their acceptance to a representative capacity, or otherwise indicate they were party to the agreement "solely on behalf of the corporations.

Given these facts, as well as the fact that the complaint made claims specifically against them, Lucente and Croy have no basis for their insistent posturing that the payment terms of the agreement do not apply to them.

B. The Settlement is Valid.

A District Court has power to enforce a settlement agreement made while an action is pending before it. Quint v. A.E. Staley Manufacturing Co., 246 F.3d 11, 14 (1st Cir. 2001); Malave v. Carrey Hospital, 170 F.3d 217, 220 (1st Cir. 1999). Settlement agreements are treated as contracts and enforced under the rules governing contracts generally. Nelson v. City of Cranston, 116 F.Supp.2d 260, 265 (D.R.I. 2000). The fact that the parties contemplate a written document will further memorialize an agreement does no prevent an otherwise valid settlement agreement from being given effect. Quint, 246 F.3d 15.

Plaintiff respectfully requests that the Court enter judgment enforcing the terms of the October 23, 2005 Settlement Agreement as follows:

1. All defendants, jointly and severally, are liable to pay plaintiff $900,000, with $300,000 to be paid upon entry of the judgment, and four installments of $150,000 to be paid annually, on the anniversary date of the entry of judgment;

2. If any installment is unpaid when due, then all unpaid installments become immediately due and payable; and,

3. Defendants shall provide plaintiff with a letter, signed by all defendants, stating "We acknowledge that all checks signed and cashed and funds received by Xavier Ballarin were legal, and we no longer claim he took funds wrongfully;"

4. Standard forms of release.

Gordon P. Cleary, No. 1948
VETTER & WHITE
Attorneys for Plaintiff
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Beth Jacobson, Esq.
Sullivan & Worcester, LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
(617) 338-2880 FAX

Dated: December 23, 2005

CERTIFICATE OF SERVICE

To:

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street - Suite 330
Providence, RI 02903-2814

Matthew J. McGowan, Esq.
Salter, McGowan, Sylvia & Leonard
The Heritage Building
321 South Main Street
Providence, Rhode Island 02903

I hereby certify that I served on the above-named counsel a copy of the within Memorandum in Support of Plaintiff's Motion To Enforce Settlement or, Alternatively, To Restore This Case to the Trial Calendar by mailing first class mail, postage prepaid, on the 23d day of December, 2005.

[signature]