UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

XAVIER BALLARIN, Plaintiff ) C.A. No. 04-278T

vs.

DARRELL LUCENTE, JOHN CROY, XLC CORP. and QUALGUARD, INC., Defendants

## AFFIDAVIT OF GORDON P. CLEARY

STATE OF RHODE ISLAND ) ss.
COUNTY OF PROVIDENCE )

Gordon P. Cleary, being sworn on oath, is deposed and states that:

1. I am co-counsel, with Beth Jacobson of Sullivan & Worcester, for plaintiff Xavier Ballarin. Mr. Ballarin is a native of France, and has lived in the United States for a number of years as resident alien.

2. Under the Court's ADR program, counsel and the parties mediated this case before the Court's ADR Administrator, Berry B. Mitchell. The parties met for mediation sessions in June, July and September, 2005.

3. Beth Jacobson and I attended all three mediation sessions with Xavier Ballarin, a one-third stockholder in XLC Corp. and Qualguard, Inc. James McCormick attended all three mediation sessions with Darrell Lucente, John Croy attending two. Mr. Lucente and Mr. Croy are each a one-third stockholder in XLC Corp. and Qualguard, Inc., and both are the officers and directors of those corporations.

4. At each of the three mediation sessions, Beth Jacobson and I made demands to settle on behalf of Xavier Ballarin. James McCormick, at each of the three mediation sessions,

made offers to settle, presumably on behalf of all defendants. At no time during any of the mediation sessions did Mr. McCormick, Mr. Lucente or Mr. Croy, state or insinuate that the offers to settle were made only by XLC Corp. and Qualguard, Inc., and not by Mr. Lucente and Mr. Croy individually. The offers to settle included the payment of money. At no time during any of the three mediation sessions did Mr. McCormick, Mr. Lucente or Mr. Croy state or insinuate that only the corporations, and not the individual defendants, would be responsible for paying the settlement amount.

5. The September 23, 2005 mediation session lasted approximately six hours. At the conclusion of the session, the parties agreed that the matter would be settled by payment of $900,000 over time, and defendants would furnish plaintiff with a letter, with specific wording, stating that his receipt of funds from the companies was legal. The letter is an important element of the settlement, because defendants filed charges with the police accusing plaintiff of wrongdoing. Discovery revealed the charges were unfounded, but the fact that charges were made was believed to be interfering with plaintiff's efforts to secure United States permanent residency.

6. When the September 23, 2005 mediation concluded, the ADR Administrator began typing the document he entitled "Settlement Agreement" attached hereto as Exhibit A. The ADR Administrator typed the first paragraph and paragraph 1. He began typing paragraph 2, but Beth Jacobson typed the quoted language of the letter because the wording was important and had been precisely agreed to after a number of proposed iterations were rejected. The case caption and signature lines were typed either by the ADR Administrator or someone in his office.

7. The ADR Administrator then called all counsel and all parties into a conference room. Counsel and the parties sat at a large conference table. I sat facing Mr. Lucente and Mr. McCormick directly. After I read the Settlement Agreement aloud, the ADR

Administrator asked me to announce out loud the payment terms that were agreed to and referenced in the Settlement Agreement. I said, "Defendants will pay plaintiff $900,000, $300,000 upon execution [of an expected, more formal settlement agreement], with the remaining $600,000 in four $150,000 installments to be paid annually, the first installment one year from execution. And, if any installment is not paid on time, the remaining installments are accelerated and immediately due and payable."

8. Then, the ADR Administrator had counsel and the parties each sign the document attached as Exhibit A. The signature lines were already on the document. Mr. Croy and Mr. Lucente signed their names with no other notations or alterations to the document Thereafter, the parties and counsel thanked the ADR Administrator and left.

9. Following the mediation, various forms of formal settlement agreements passed back and forth between Mr. McCormick and me. The process dragged on. However, on November 14, 2005, Mr. McCormick wrote me saying that if we could resolve a provision putting Xavier Ballarin's shares in escrow pending his receipt of full payment, he was "confident the remaining issues will fall into place."

10. I wrote Mr. McCormick the following day, asking for clarification of his letter and asking him to call me by November 17, 2005. He called me that day, and informed me that I would be hearing from Lester Salter, Esq. and Matthew McGowan, Esq., defendants' pre-suit counsel, about settlement. In effect, Mr. McGowan and Mr. Salter had supplanted Mr. McCormick as regards settlement. I called Mr. McGowan immediately and set up a meeting with him on November 21, 2005.

11. I met with Mr. McGowan on November 21st, at his office. It quickly became clear that the settlement was coming undone. Mr. McGowan took the position that Mr. Lucente and Mr. Croy were not obligated, along with XLC Corp. and Qualguard, Inc., to pay the

settlement amount. Mr. McGowan also stated that Mr. Ballarin would have to sign a non-compete agreement. Mr. McGowan stated he had information that Mr. Ballarin's business activities would put him in violation of a non-compete as soon as he signed it. He tried to get me to confirm his information, but I refused. (Around this same time, I learned that Mr. Lucente transferred all of his interest in his Warwick real estate to his wife, for no consideration, during the bankruptcy of one of his other companies).

12. Since the November 21, 2005 meeting, I have talked and corresponded with Mr. McGowan numerous times, and counsel in the case met again with the ADR Administrator, at the ADR Administrator's request, on December 1, 2005. Despite these efforts there is no formal settlement agreement. Mr. McGowan contends Mr. Lucente and Mr. Croy are not responsible for settlement payments, but refuses to state that position in writing.

13. I maintain that the parties in this case agreed to settle on the following terms:

A. All defendants are jointly and severally liable to pay the settlement amount, $900,000: $300,000 upon the entry of the judgment and four annual installments of $150,000, to be paid on the anniversary date of the payment of the initial $300,000;

B. Upon a default in any one of the settlement payments, all unpaid installments become immediately due and payable;

C. Defendants sign and produce a letter to Xavier Ballarin that says precisely, with nothing more and nothing less than, "We acknowledge that all checks signed and cashed and funds received by Xavier Ballarin were legal, and we no longer claim he took funds wrongfully."

D. Standard forms of release.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on December 23, 2005.

[signature]

## CERTIFICATE OF SERVICE

To:

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street - Suite 330
Providence, RI 02903-2814

Matthew J. McGowan, Esq.
Salter, McGowan, Sylvia & Leonard
The Heritage Building
321 South Main Street
Providence, Rhode Island 02903

I hereby certify that I served on the above-named counsel a copy of the within Affidavit of Gordon P. Cleary by fax and mailing first class mail, postage prepaid, on the 23rd day of December, 2005.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| XAVIER BALLARIN<br>Plaintiff<br>vs<br>DARRELL LUCENTE, ET AL<br>Defendant(s) | ) | CA 04-CV-278T |

# SETTLEMENT AGREEMENT

The parties in the above captioned matter hereby agree to settle this case on the following terms and conditions.

1. Payment of $900,000 dollars payable per schedule agreed upon by the parties at the time of mediation.

2. Defendants will provide to plaintiff a letter stating "we acknowledge that all checks signed and cashed and funds received by Xavier Ballarin were legal, and we no longer claim he took funds wrongfully."

Plaintiff's Counsel 9/23/05
Beth L. Jacobson, Esq.

Defendant's Counsel 9/23/05
James T. McCormick, Esq.

9/23/05
Plaintiff, Xavier Ballarin

9/23/05
Darrell Lucente

9/23/05
John Croy

9/23/05

Dated this the 23rd day of September, 2005.

**EXHIBIT A**