UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Xavier Ballarin, Plaintiff | ) | |
| vs. | ) | C.A. No. 04-278T |
| Darrell Lucente, John Croy, XLC Corp. and Qualguard, Inc. Defendants | ) | |

**LIMITED OBJECTION TO MOTION TO ENFORCE SETTLEMENT OR, ALTERNATIVELY, TO PLACE CASE ON TRIAL CALENDAR**

The Defendants object, to a limited extent, to the Plaintiff's Motion to Enforce Settlement or, Alternatively, to Place this Case on the Trial Calendar. In support of their Objection, they respectfully refer the Court to their supporting memorandum and the Affidavit of James T. McCormick filed herewith.

Defendants
By their attorneys,

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street – Suite 330
Providence, RI 02903
(401) 831-2970
(401) 751-1797 Fax

Matthew J. McGowan, Esq.
Salter McGowan Sylvia & Leonard, Inc.
321 South Main Street
Providence, RI 02903
(401) 274-0300
(401) 453-0073 Fax

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Xavier Ballarin, Plaintiff | ) | |
| vs. | ) | C.A. No. 04-278T |
| Darrell Lucente, John Croy, XLC Corp. and Qualguard, Inc. Defendants | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that I have this date served a copy of the attached **LIMITED OBJECTION TO MOTION TO ENFORCE SETTLEMENT OR, ALTERNATIVELY, TO PLACE CASE ON TRIAL CALENDAR and the MEMORANDUM and AFFIDAVIT in support thereof** on the persons listed below by first-class mail, postage prepaid.

Gordon Cleary, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

Beth L. Jacobson, Esq.
Sullivan & Worcester LLP
One Post Office Square
Boston, MA 02109

January 5, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Xavier Ballarin,<br><br>Plaintiff<br><br>vs.<br><br>Darrell Lucente, John Croy,<br>XLC Corp. and Qualguard, Inc.<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 04-278T |

**MEMORANDUM IN SUPPORT OF LIMITED OBJECTION TO MOTION TO ENFORCE SETTLEMENT OR, ALTERNATIVELY, TO PLACE CASE ON TRIAL CALENDAR**

The Defendants, in support of their Limited Objection to the Plaintiff's Motion to Enforce Settlement or, Alternatively, to Place this Case on the Trial Calendar, respectfully refer the Court to the Affidavit of James T. McCormick, and further state as follows:

**Introduction**

1. The Defendants are fully prepared to carry out the terms of the two-sentence Settlement Agreement entered into on September 23, 2005, attached as Exhibit A hereto (the "Settlement Agreement"). Toward that end, more than three weeks ago, $300,000, the first installment toward the $900,000 obligation referenced in that Agreement, was placed in the clients' account at the law firm of Salter McGowan Sylvia and Leonard and remains there today, and the Defendants have prepared, executed and placed in escrow with that same firm the letter also agreed to be provided under that Agreement.

2. In his Motion to Enforce Settlement or, Alternatively, to Place this Case on the Trial Calendar (the "Motion to Enforce"), the Plaintiff, Xavier Ballarin ("Ballarin"), in contrast to the expansive demands he first issued after the Settlement Agreement was entered into and,

until the filing of his motion, had persisted in advancing, now sets out four points that he asserts should constitute the settlement between the parties. The Defendants agree with two of those points (the providing of the letter, and that standard and fully binding forms of *general* releases be executed). Also agreed is that $900,000 is to be paid through an up-front payment of $300,000 and four annual installments of $150,000, and that if an installment payment is not made, then the remaining obligation would become immediately due, although there must be a reasonable notice period provided before any such acceleration occurs.

3. As to the points of disagreement, there was no agreement or understanding, and certainly it is not expressed in the Settlement Agreement, as Ballarin would now seek to have it, that "All defendants, jointly and severally, are liable to pay plaintiff $900,000 … ." Ballarin's Memorandum in Support of Motion to Enforce at p.1. Indeed, it is clear from Ballarin's Motion to Enforce and the Affidavit in support thereof that even Ballarin does not assert that there was ever any meeting of the minds or agreement on that point, as that Motion and Affidavit refer simply to what was *inferred* by Ballarin and/or his counsel on that point. Further, beyond this and at an even more fundamental level, there is no need for this Court to reach out and decide that issue now, or, in all likelihood, ever, since there is simply no actual case or controversy for the Court to adjudicate at this time, nor, again, in all likelihood, will there ever be one on that point.

4. What is undisputed is that the Settlement Agreement, plainly read, provides that $900,000 should be paid. Also undisputed is that it references a schedule for payment of such $900,000, as to which there is no disagreement. The first installment of $300,000 is available to be paid to Ballarin, as that money has been on deposit in a clients' account for weeks. If that and the ensuing $150,000 annual payments are made -- and there is no reason whatsoever to think at

this time that such payments will not be made -- then there is nothing for this Court to decide on the point of who is or is not legally liable to make such payments, as Ballarin will have been paid exactly what was agreed to be paid to him and what he agreed to accept.

5. Not mentioned in Ballarin's recitation of the travel and points of disagreement in this matter, and not addressed in his four points, is that Ballarin has persisted in seeking to obtain a financial windfall for himself and to impose a corresponding financial burden on the Defendants, neither of which was ever agreed to, by refusing to accept that it must follow that as the $900,000 is paid down to him through such agreed-upon installment payments there must be a proportionate reduction in his putative stockholding interests in XLC Corp. ("XLC") and Qualguard, Inc. ("Qualguard").

**Travel and Specifically What Settlement, Reasonably Construed, Provides**

6. It is not disputed that the essence of Ballarin's Complaint commencing this action is for a buyout of his alleged or putative interest in XLC and Qualguard. Indeed, the relief sought throughout that Complaint is for payment of his stock either through a liquidation of those corporate entities or a buyout of his alleged interests therein.

7. The settlement reached here was nothing more nor less than a corporate redemption of Ballarin's putative stockholding interests at an ultimately compromised figure of $900,000, along with an agreement on the schedule of installments under which such amount would be paid. What is abundantly clear from the bare-bones Settlement Agreement is that much was left out of that Agreement or left for another day, including who would be legally responsible for payment of the $900,000 agreed-upon amount.

8. The first paragraph of the Settlement Agreement says that what was agreed to is:

> "1. Payment of $900,000 dollars payable per schedule agreed upon by the parties at the time of mediation."

The next paragraph begins with the phrase:

> "2. *Defendants* will provide . . . [emphasis added]."

If there truly had been an agreement that each and every Defendant, including the individual Defendants personally, would be liable to pay $900,000, then the first sentence of the Settlement Agreement very easily could have and logically would have said, with the same specificity as is found in the second sentence of that Settlement Agreement, that the "Defendants will pay $900,000 . . .", or words to the effect that, "All of the Defendants, shall be liable, jointly and severally, to pay the $900,000". The absence of any such language, particularly the telling absence of such a readily available term of art as "jointly and severally" in that Settlement Agreement (a phrase that, as the Court will note, despite being entirely absent from the Settlement Agreement now appears repeatedly in Ballarin's motion and memorandum to have that same Settlement Agreement enforced) in referring to who was legally obligated to pay evidences that there was, in fact, no meeting of the minds and no agreement as to who would be liable to pay the $900,000; and Ballarin, in the context of a settlement grounded in a *corporate* redemption, cannot impose *personal liability to the extent of $900,000* on *individual* defendants, Darrell Lucente ("Lucente") and John Croy ("Croy"), on the basis of his or his counsel's partisan *inferences*.

9. As set forth in the Affidavit of James McCormick, there was no discussion of who would be legally liable to pay the $900,000, let alone a meeting of the minds or agreement on that point. Ballarin's carefully crafted and phrased contention is that: "At no time during

settlement discussions, or during mediation, was exclusion of any defendant from responsibility to pay the settlement amount ever mentioned." Memorandum in Support of Motion to Enforce at p.5. Ballarin's statement establishes nothing, as he neglects to point out that the converse of that is true -- that is, that there was no discussion of who would be included and legally liable to pay. Although it very easily could have been but ultimately never was expressed in that September 2005 Settlement Agreement, Ballarin, nonetheless, insists that despite that telling absence, this Court must, on the flimsy basis of inferences, create into existence and now superimpose onto that cryptic Agreement the highly material words of "jointly and severally liable".

10. After a six-hour mediation session on September 23, 2005, the parties were pleased that a settlement figure had been arrived at along with a schedule for its payment. That (along with the language of a proposed letter) is all that was agreed to. And it was certainly not agreed that Lucente and Croy would be personally liable to pay what was a corporate redemption at a compromised figure. A fair construction of the Settlement Agreement is that who would be legally responsible for payment of the $900,000 agreed-upon amount was a matter left out or left for another day, and where the parties have done so, this Court may and should do likewise.

11. Not mentioned in Ballarin's submissions is an important point relating to the proportionate reduction and ultimate extinguishment of his putative stockholding interests in XLC and Qualguard. Because under any fair reading of what was agreed to there is to be a corporate redemption of Ballarin's putative stockholding interest, it must be provided, equity and fairness would demand, and it flows naturally therefrom that as and to the extent that payments are made against such $900,000 obligation, Ballarin's alleged one-third stockholding interests in XLC and Qualguard must be reduced proportionately and ultimately extinguished. Understandably, the Defendants have insisted that this is implicit in the Settlement Agreement

and must be so provided, since otherwise Ballarin would receive a financial windfall and there would be a corresponding financial burden and penalty imposed upon the Defendants, neither of which was agreed to.

12. An example illustrates this point. Under the settlement, Ballarin's putative shareholding interests are being bought back over time. If, for example, $750,000 of the $900,000 agreed-upon amount has been paid to Ballarin and there is a default in the last payment of $150,000, it cannot be, as Ballarin would have it, that having already been paid $750,000 toward a redemption of his one-third interests in XLC and Qualguard (that is, having been paid 83.33% of the redemption price), Ballarin has the right to retain or get back the entirety of that full, original one-third interest. To permit that would be to allow Ballarin to demand that his interests be redeemed a *second* time and that he be *paid again* for that same one-third interest; or, alternatively, to allow him to transfer or sell that one-third interest to a third party, retain what he is paid for that, have the Defendants receive nothing for the $750,000 paid to Ballarin and have them have to deal with a new one-third shareholder who will, in time, want to have his stockholding interest redeemed. All the while, Ballarin would, in addition, also purport to still hold a claim for the $150,000 remaining to be paid to him. As and when payments are made against such $900,000 obligation, Ballarin's putative one-third stockholding interests in XLC and Qualguard must be reduced proportionately, and when the full $900,000 is paid, the remaining reduced amount of his interests must be completely extinguished.

13. The Defendants will spare the Court a recitation of the minutiae of what was set out therein, but suffice to say that shortly after the Settlement Agreement was entered into, a lengthy expansive settlement agreement was drafted and proposed by Ballarin's counsel which had numerous material and significant additional provisions that had never been discussed and

agreed to, and, in juxtaposition to the two-sentence Settlement Agreement from which that proposed expansive agreement supposedly emanated, did nothing but graphically illustrate: i) just how much had been left out of the Settlement Agreement; and ii) the extent to which Ballarin was, after the fact, seeking for himself a substantially better deal than had ever been agreed to. When, given that initial overture, inevitably an impasse was reached, the Defendants, with attorney Matthew McGowan at that point working with Mr. McCormick, attempted in good faith to return to what had been agreed to and what in fairness could reasonably be considered to have flowed therefrom. The Defendants and their counsel have continuously thereafter, in good faith and without issuing or returning ultimatums, "take-it-or-leave-it" demands, or proposals without detailed explanations for their reasonableness and rationales, spent a very substantial amount of time attempting to reach an agreement that would fairly dispose of the outstanding issues. Regrettably, Ballarin, rather than responding to what was a then pending and thoughtful proposal made to his counsel, decided instead to end all discussions and to file his Motion to Enforce on the Friday afternoon of the Christmas holiday.

**Summary of Defendants' Position**

14. The settlement should be enforced on the following basis:

a. Just as is set forth in the Settlement Agreement, it should provide that $900,000 shall be paid to Ballarin, $300,000 up front and $150,000 annually for four years. The settlement need not and should not provide anything further on this point.

b. If there is a default in making an installment payment of $150,000, there would be an acceleration of the remaining installment obligations but only after a reasonable written notice period of no less than ten (10) days (a written notice period that

correlates to that provided under the Uniform Commercial Code) has first been furnished by Ballarin or his counsel, as is normal and customary.

c. The Defendants will provide the letter set forth in the second sentence of the Settlement Agreement.

d. Standard forms of comprehensive and fully binding *general* releases would be exchanged between the parties. Difficulties were encountered when Ballarin sought not a "standard" form of release, as he now proposes through his Motion to Enforce, but a form of release that would release him from acts and undertakings that he engages in the *future*. That was never bargained for nor agreed to, and it is not the norm or part of any custom or practice to provide a release from future conduct. Further, the releases must be without exception. An impasse was experienced when Ballarin surprisingly balked at the Defendants understandable insistence that, given that Ballarin had two law firms in this case, that he had undertaken discovery and that he was agreeing to a fixed sum, the releases be general and without exceptions or "wiggle room", such that following the settlement Ballarin would, for example, have no right to come back and ask for more money for his putative stockholding interests. It is noteworthy that Ballarin apparently still seeks an "out" and opportunity to seek even more money, as in his submissions he declines to refer to the releases as being *general*.

e. As and to the extent that payments are made against such $900,000 amount, Ballarin's alleged one-third stockholding interests in XLC and Qualguard must be reduced proportionately and ultimately extinguished. Specifically, upon $300,000 being paid to him (one-third of the $900,000), Ballarin's stockholding interest must be

reduced to only a remaining two-third's of a one-third interest, and proportionately reduced thereafter, for all purposes, as further payments are made.

Defendants
By their attorneys,

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street – Suite 330
Providence, RI 02903
(401) 831-2970
(401) 751-1797 Fax

Matthew J. McGowan, Esq.
Salter McGowan Sylvia & Leonard, Inc.
321 South Main Street
Providence, RI 02903
(401) 274-0300
(401) 453-0073 Fax

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Xavier Ballarin,<br><br>Plaintiff<br><br>vs.<br><br>Darrell Lucente, John Croy,<br>XLC Corp. and Qualguard, Inc.<br><br>Defendants | ) | C.A. No. 04-278T |

## AFFIDAVIT OF JAMES T. McCORMICK

STATE OF RHODE ISLAND )
) ss.
COUNTY OF PROVIDENCE )

James T. McCormick, being sworn on oath and deposed, states that:

1. I am counsel for Defendants Darrell Lucente, John Croy, XLC Corp. and Qualguard, Inc. in this case.

2. This affidavit is being offered as part of Defendants' Memorandum in Support of Limited Objection to Motion to Enforce Settlement or, Alternatively, to Place Case on Trial Calendar. This affidavit is not intended to be a comprehensive recitation of all facts in this matter, nor is it intended to be a point-by-point response to the affidavit of Gordon P. Cleary filed with Plaintiff's motion.

3. This affidavit addresses the narrow issue of whether there was any discussion, meeting of the minds or agreement as to whether all Defendants, particularly the individual Defendants, Darrell Lucente and John Croy, would be jointly and severally liable for the $900,000 settlement agreed to by the parties in the "Settlement Agreement" executed at the mediation of this case.

4. At no time during any of the three mediation sessions was there any discussion whatsoever between the parties about whether Darrell Lucente and John Croy would be jointly and severally liable for the buyout of Plaintiff Xavier Ballarin's one-third (1/3) putative stock interest in XLC Corp. and Qualguard, Inc.

5. Mr. Cleary's affidavit correctly states I did not indicate at the mediation sessions that the individual defendants would not liable or responsible for the payment or payments to Mr. Ballarin because the point was simply not discussed at all.

Pursuant to 28 USC §1746, I declare under penalty of perjury that the foregoing is true and accurate. Executed on 01/05/06.

James T. McCormick (#2614)

EXHIBIT

A

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| XAVIER BALLARIN<br>Plaintiff<br>vs<br><br>DARRELL LUCENTE, ET AL<br>Defendant(s) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CA 04-CV-278T |

## SETTLEMENT AGREEMENT

The parties in the above captioned matter hereby agree to settle this case on the following terms and conditions.

1. Payment of $900,000 dollars payable per schedule agreed upon by the parties at the time of mediation.

2. Defendants will provide to plaintiff's letter stating "we acknowledge that all checks signed and cashed and funds received by Xavior Ballarin were legal, and we no longer claim he took funds wrongfully."

Plaintiff's Counsel
9/23/05
Beth L. Jacobson, Esq.

Defendant's Counsel
9/23/05
James T. McCormick, Esq.

9/23/05
Plaintiff, Xavier Ballarin

Darrell Lucente

9/23/05
John Croy

Dated this the 23rd day of September, 2005.