UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| XAVIER BALLARIN, Plaintiff | ) | C.A. No. 04-278T |
| vs. | ) | |
| DARRELL LUCENTE , JOHN CROY, XLC CORP. and QUALGUARD, INC., Defendants | ) | |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO ENFORCE SETTLEMENT OR, ALTERNATIVELY,
TO PLACE CASE ON THE TRIAL CALENDAR

Defendants' objection is internally inconsistent, and rests entirely on the mistaken notion that there was "no meeting of the minds or agreement" that the individual and corporate defendants would be responsible for the settlement payments.

The Parties Agreed Defendants Lucente And Croy Are Liable.

The case that was settled was not a corporate buyout. What was settled was a three count complaint, two counts against defendants Lucente and Croy, as individual majority shareholders, for oppression of Ballarin as a minority shareholder, and one count against all defendants for breaches of their obligation of good faith and fair dealing. The relief sought was liquidation of the corporation, or a forced purchase of Ballarin's shares. That relief is available against majority shareholders, such as Lucente and Croy. *A. Teixeira & Co., Inc. v. Teixeira* , 2001 WL 418990 (R.I. Super. 2001) *citing A. Teixeira & Co., Inc. v. Teixeira, 674 A.2d 404 (R.I. 1996)* (affirming order that majority shareholders purchase minority shareholders' stock).

Throughout three mediation sessions, defendants said, "we will pay," or, "we won't pay," or, "we can't afford," or, "we want payments over time." Defendants' affidavit says "who would pay" was never discussed, but fails to reveal who was the "we" making the

settlement offers, or how it was supposedly made known that the individual defendants were somehow carved out of the obligation to pay but still expected a release from Ballarin.

But this is context. Defendants' memorandum and affidavit simply ignore the most important event establishing an agreement. When it came time to state what was agreed about payment, when all counsel and the parties sat at the ADR Administrator's conference table, plaintiff's counsel stated, "Defendants will pay $900,000, $300,000 upon execution ...." After that recitation, defendants and their counsel signed the settlement sheet without question, objection, modification or reservation of any sort.

That defendants agreed that all defendants would be responsible to pay is not established by plaintiff's unilateral inference. It is established by an objective event with clear legal significance. Defendants completely ignore that event – the declaration that the agreement was that defendants would pay – in order to maintain their present position.

Defendants' Essential Position Is Absurd and Will Simply Breed More Litigation.

Defendants state, in various iterations, that there was no meeting of the parties' minds and no agreement about who is to make the settlement payments. Def. Mem. at pp. 2, 4, 5. Defendants would have the Court rule that "who would be legally responsible for payment ... was a matter left out or left for another day ... ." Def. Mem. at p. 5.

This contention is nonsensical. To accept it is to accept that the parties and the mediator left the mediation without deciding who had the obligation to pay. Without that decision, no one has the obligation to pay, and defendants' agreement is illusory.

More troubling, by asking the Court to rule as they prescribe, defendants are asking for a guarantee that they can litigate this settlement later, after a default occurs for example. At that time, they can press again the position that there was no agreement, no one is liable, and so plaintiff Ballarin is simply out of luck when it comes to what he is owed. Indeed,

the opportunity to force litigation on that point might be reason for defendants to default on one of the last two installments and attempt to broker a compromise payment solely because of litigation costs.

Ballarin Should Maintain His Full Stock Position Until He is Fully Paid For It.

Defendants' position on Ballarin's retention of his stock certificates until full payment is also internally inconsistent. On one hand, defendants say there is no need "ever" for the Court to decide who is responsible to pay, because in all "likelihood" Ballarin will be paid fully, without a hitch. Def. Mem. at p. 2. Again, defendants assure, "There is no reason whatsoever to think at this time such payments will not be paid ... ." Def. Mem. at pp. 2-3. If that is the case, then there will be no need for Ballarin to "ever" sell shares to recoup what he is owed, and "no reason whatsoever to think" Ballarin would sell to a third party, or seek to force a buyout a second time, or keep the stock and press a claim for the last $150,000 installment. Def. Mem. at p. 6. Defendants' clamoring about a "windfall" is simply empty rhetoric.

On the other hand, defendants insist that a condition of proportional reduction of Ballarin's stockholding "must be provided" because "equity and fairness ... demand" it and it "flows naturally therefrom," even though the subject was never mentioned in negotiations predating the mediations, or any of the mediations. The irony in defendants' arguing a proportional reduction of stock must be inferred or implied, while at the same time maintaining defendants Lucente and Croy cannot be responsible for payment, is striking. Defendants are trying to have things both ways and more.

The short answer to defendants' position on the stock is that Ballarin's stock will be surrendered upon full payment to him. Until full payment, the stock stands as security for what Ballarin is owed over the four years the installment payments are stretched. Had

defendants raised proportional reduction of the stock position at the mediation, Ballarin would have insisted on greater security for what he is owed.

Moreover, defendants are in control of the event of default. If cash is short, but the value of the defendant companies is strong, defendants can obtain a loan to cover an installment payment and prevent a default. If there is a default in payment, the default will likely occur because the corporations' financial value has declined greatly. If that is the case, then the value of Ballarin's stock will have declined as well; so more stock will be needed to realize what is owed. Clearly, the importance of the stock as security for payments stretching four years into the future increases over time; it does not diminish. Thus, defendants' allegations that Ballarin is looking for a "financial windfall" have no merit and are simply rhetoric intended to divert attention from the issue at hand. The amount of the settlement is a significantly discounted value of one third of the value of the corporate entities. There is nothing inequitable in Ballarin retaining his stock until defendants make all payments required to meet that amount.

<u>The Progress of the Negotiations</u>

Defendants are in a poor position to complain about Ballarin's positions following the mediation. Ballarin's sole interest has been to receive the payments that had been agreed to, to secure those payments, and to give defendants every reason in the world to pay him. Unlike defendants, who sought to foist financial burdens on Ballarin, such as a tax allocation provision and a non-competition agreement, the elements Ballarin sought to include in an expanded settlement agreement were all directed to security for the payments owed to him. At the same time, defendants have employed two law firms and have a bankruptcy lawyer, John Boyajian, involved for some reason. Defendants include one individual who transferred real estate, without consideration, during a prior corporate bankruptcy (a fact defendants do not contest). Moreover, while insisting on a "super" release for themselves, defendants have stated that they

want to sue Ballarin following the settlement, and labeled the non-compete agreement (never discussed or raised by defendants during any negotiations preceding mediation or at any of the mediations) as a "deal-breaker," even though defendants claim to know Ballarin would be in violation as soon as he signed such an agreement.

In contrast, what Ballarin has sought is only security for what he is owed, and security is more than justified by defendants' conduct.

## CONCLUSION

Defendants have failed to raise a legitimate objection to the motion to enforce. For the reasons stated in his supporting memorandum and affidavit, and in this reply memorandum, plaintiff respectfully requests that the motion to enforce be granted.

Gordon P. Cleary, No. 1948
VETTER & WHITE
Attorneys for Plaintiff
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Beth Jacobson, Esq.
Sullivan & Worcester, LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800
(617) 338-2880 FAX

Dated: January 10, 2006

CERTIFICATE OF SERVICE

To:

James T. McCormick, Esq.
McKenna & McCormick
128 Dorrance Street - Suite 330
Providence, RI 02903-2814

Matthew J. McGowan, Esq.
Salter, McGowan, Sylvia & Leonard
The Heritage Building
321 South Main Street
Providence, Rhode Island 02903

I hereby certify that I served on the above-named counsel of record a copy of the within Plaintiff's Reply Memorandum in Support of Motion To Enforce Settlement or, Alternatively, To Place Case on the Trial Calendar by mailing first class mail, postage prepaid, on the 10th day of January, 2006.